# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

**DALE M.[1]**,

        Plaintiff,

  v.

**KILOLO KIJAKAZI,** Acting
Commissioner of Social Security,

        Defendant.

Case No. 3:21-cv-1484-SI

**OPINION AND ORDER**

Laurie B. Mapes, PO Box 1241, Scappoose, OR 97056. Of Attorneys for Plaintiff.

Natalie K. Wight, United States Attorney, and Renata Gowie, Civil Division Chief,
UNITED STATES ATTORNEY'S OFFICE, 1000 SW Third Avenue, Suite 600, Portland, OR 97204;
Sarah Moum, Special Assistant United States Attorney, OFFICE OF GENERAL COUNSEL,
Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104.
Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

        Plaintiff Dale M. seeks judicial review of the final decision of the Commissioner of the

Social Security Administration (Commissioner) denying Plaintiff's application for disability

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial
of the last name of the non-governmental party in this case. When applicable, this Opinion and
Order uses the same designation for a non-governmental party's immediate family member.

PAGE 1 – OPINION AND ORDER

insurance benefits (DIB) and for supplemental security income (SSI) under Titles II and XVI of the Social Security Act (Act). For the reasons discussed below, the Court REVERSES the Commissioner's finding that Plaintiff is not disabled and REMANDS for further proceedings consistent with this Opinion and Order.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

When the evidence is susceptible to more than one rational interpretation, the Court must uphold the Commissioner's conclusion. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

## BACKGROUND

### A.  Plaintiff's Application

Plaintiff applied for DIB and SSI on January 23, 2019, alleging disability beginning March 1, 2015. AR 74. Plaintiff was born on January 21, 1967, and was 48 years old at the alleged onset date of his disabilities. AR 142. The Commissioner denied these claims on May 9, 2019, and again upon reconsideration on October 3, 2019. AR 74. Plaintiff then filed a written request for hearing before an administrative law judge (ALJ), received on December 5, 2019. *Id.*

Plaintiff participated in a telephone hearing with his attorney, the ALJ, and an impartial vocational expert on November 12, 2020. *Id.* The ALJ found Plaintiff to be not disabled in a decision dated January 13, 2021. AR 83-84. In making this decision, the ALJ chose not to adopt a previous ALJ decision, issued April 4, 2018, that found the same. AR 75. The ALJ determined that the previous ALJ's opinion had no *res judicata* affect with respect to the non-adjudicated period because there was new and material evidence showing changed circumstances. *Id.*

Plaintiff timely appealed the ALJ's decision to the Appeals Council, which denied that request for review on August 6, 2021. AR 1-5. The Appeals Council's denial made the ALJ's opinion the final decision of the Commissioner. Plaintiff appeals that decision to this Court.

### B.  The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. §§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is

potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential

process asks the following series of questions:

1.  Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2.  Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3.  Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" (RFC). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4.  Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5.  Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in

significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

## C.  The ALJ's Decision

As a preliminary step for Plaintiff's DIB claim, the ALJ found that Plaintiff met the insured status of the Act through December 31, 2019. AR 77. The ALJ then performed the sequential analysis. At step one of the sequential analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 1, 2015, the alleged disability onset date. *Id.* At step two, the ALJ found that Plaintiff had several severe impairments: a history of aortic aneurism and common iliac artery aneurism with aorta common iliac bypass, ventral hernia status-post repair, gastroesophageal reflux disorder, and ulcerative pancolitis. *Id*. The ALJ,

however, found that Plaintiff's medically determinable mental impairments—anxiety and depression—did not cause enough limitation in Plaintiff's abilities to qualify as severe. *Id.*

At step three, the ALJ determined that Plaintiff does not have an impairment that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 79. The ALJ next assessed Plaintiff's RFC. The ALJ found that Plaintiff had the RFC to perform "the full range of medium work as defined in 20 C.F.R. 4010.1567(c) and 416.967(c)." *Id*. The ALJ reached this conclusion by finding that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of [his] symptoms are not entirely consistent with the medical evidence and other evidence in the record." AR 80-81.

At step four, the ALJ found that Plaintiff could perform past relevant work as a composite job of store laborer and crane operator. AR 81-82. The ALJ based this determination on the vocational expert's conclusions during the hearing on November 12, 2020. AR 82. At step five, based on testimony from the vocational expert, the ALJ found that Plaintiff could also work as a hand packager, kitchen helper, or groundskeeper, based on Plaintiff's age, education, work experience, and RFC. AR 83. Thus, the ALJ found that Plaintiff was not disabled. AR 84.

## DISCUSSION

Plaintiff contends that the ALJ erred by: (A) rejecting several of Plaintiff's reports of his symptoms or their severity; (B) disregarding evidence, including treating medical source opinions, that were in the ALJ's possession from the previous ALJ's 2018 findings and decision; (C) ignoring lay witness testimony; and (D) relying on the opinions of two non-examining doctors. Plaintiff asks the Court to remand for an immediate calculation of benefits.

### A.  Plaintiff's Subjective Symptom Testimony

Plaintiff argues that the ALJ erred by rejecting Plaintiff's reports of the severity of his symptoms and persistence of his limitations without providing legally sufficient reasons for

doing so. Plaintiff contends that the ALJ erroneously rejected Plaintiff's reports of his chronic abdominal pain, his use of a cane or motor scooter, his chronic headaches, his need to recline for much of the day, and his impaired concentration. The Commissioner responds that the ALJ met his obligation to support his conclusions with specific reasons and properly evaluated Plaintiff's subjective symptom reports as inconsistent with medical evidence.

### 1. Standard

A claimant "may make statements about the intensity, persistence, and limiting effects of his or her symptoms." SSR 16-3p, 2017 WL 5180304, at *6 (Oct. 25 2017).[2] There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, "the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting

---

[2] Effective March 28, 2016, Social Security Ruling (SSR) 96-7p was superseded by SSR 16-3p, which eliminates the term "credibility" from the agency's sub-regulatory policy. SSR 16-3p; Titles II and XVI: Evaluation of Symptoms in Disability Claims, 81 Fed. Reg. 14166 (Mar. 16, 2016). Because, however, case law references the term "credibility," it may be used in this Opinion and Order.

*Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46).

Consideration of subjective symptom testimony "is not an examination of an individual's character," and requires the ALJ to consider all the evidence in an individual's record when evaluating the intensity and persistence of symptoms. SSR 16-3p, *available at* 2016 WL 1119029, at *1-2. The Commissioner recommends that the ALJ examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4. The Commissioner further recommends assessing: (1) the claimant's statements made to the Commissioner, medical providers, and others regarding the claimant's location, frequency and duration of symptoms, the impact of the symptoms on daily living activities, factors that precipitate and aggravate symptoms, medications and treatments used, and other methods used to alleviate symptoms; (2) medical source opinions, statements, and medical reports regarding the claimant's history, treatment, responses to treatment, prior work record, efforts to work, daily activities, and other information about the intensity, persistence, and limiting effects of an individual's symptoms; and (3) non-medical source statements, considering how consistent those statements are with the claimant's statements about his or her symptoms and other evidence in the file. *See id.* at *6-7.

The ALJ's decision relating to a claimant's subjective testimony may be upheld overall even if not all the ALJ's reasons for discounting the claimant's testimony are upheld. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004). The ALJ may not, however, discount testimony "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

### 2.  Analysis

Plaintiff first asserts that the ALJ erred by failing to provide the degree of specificity required in the Ninth Circuit by failing to identify what evidence discredited which testimony. Plaintiff also argues that the ALJ's proffered reasons for partially discounting Plaintiff's subjective testimony are legally insufficient. The ALJ discounted Plaintiff's testimony because his symptoms were adequately treated by pain medication, he failed to show that he was prescribed or otherwise needs a cane, and his alleged limitations are unsupported by the objective medical evidence. AR 80-81.[3]

#### a.  Lack of Specificity

An ALJ must specifically identify what evidence contradicted what testimony. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103 (9th Cir. 2014) (stating that an ALJ may not vaguely conclude that "a claimant's testimony is 'not consistent with the objective medical evidence,' without any 'specific findings in support' of that conclusion" (quoting

---

[3] The Commissioner argues in her brief that additional reasons support the ALJ's findings, but the Court does not consider such *post hoc* reasoning. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009) ("Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking.").

*Vasquez v. Astrue*, 572 F.3d 586, 592 (9th Cir. 2009))). A court "cannot review whether the ALJ provided specific, clear, and convincing reasons for rejecting [a clamaint's] pain testimony where . . . the ALJ never identified *which* testimony she found not credible, and never explained *which* evidence contradicted that testimony." *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) (emphasis in original) (quoting *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015)). "[A]n ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination" but must "specify which testimony she finds not credible." *Brown-Hunter*, 806 F.3d at 489 (quoting *Burrell v. Colvin*, 775 F.3d 1133, 1139 (9th Cir. 2014)).

Other than generally mentioning Plaintiff's abdominal pain and alleged need for a cane, the ALJ did not identify the purported symptoms or limitations that the ALJ found inconsistent with or unsupported by the medical evidence. Although the ALJ summarized Plaintiff's medical history and identified certain medical records, the ALJ did not specifically identify the conflicts between the record and Plaintiff's testimony. *See Lambert*, 980 F.3d at 1278 "[P]rovid[ing] a relatively detailed overview of [a claimant's] medical history . . . 'is not the same as providing clear and convincing *reasons* for finding the claimant's symptom testimony not credible.'" (emphasis in original) (quoting *Brown-Hunter*, 806 F.3d at 494)); *Treichler*, 775 F.3d at 1103 (rejecting the argument that because the ALJ "set out his RFC and summarized the evidence supporting his determination" the court could infer "that the ALJ rejected [petitioner's] testimony to the extent it conflicted with that medical evidence"); *Smolen*, 80 F.3d at 1284 ("The ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion."). Instead, the ALJ must "identify the testimony she found not credible"

and "link that testimony to the particular parts of the record supporting her non-credibility determination." *Brown-Hunter*, 806 F.3d at 494. Failure to do so is legal error. *Id.*

"[W]e may not take a general finding—an unspecified conflict between Claimant's testimony . . . and her reports to doctors—and comb the administrative record to find specific conflicts." *Brown-Hunter*, 806 F.3d at 494 (omission in original). Though the ALJ discussed portions of Plaintiff's records, the ALJ did not explain what aspects of Plaintiff's testimony conflicted with those records. "Because the ALJ failed to identify the testimony [he] found not credible, [he] did not link that testimony to the particular parts of the record supporting her non-credibility determination. This was legal error." *Id.* at 494; *see also Burrell*, 775 F.3d at 1138-39 ("[T]he ALJ never connected the medical record to Claimant's testimony about her headaches. . . . For that reason alone, we reject the government's argument that the history of treatment for headaches is a specific, clear, and convincing reason to support the credibility finding.").

### b. Treatment with Pain Medication

A claimant's improvement with treatment is "an important indicator of the intensity and persistence of . . . symptoms." 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). For example, "[i]mpairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits." *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006). Symptom improvement, however, must be weighed within the context of an "overall diagnostic picture." *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001); *see also Lester v. Chater*, 81 F.3d 821, 833 (9th Cir. 1995) ("Occasional symptom-free periods . . . are not inconsistent with disability.").

The ALJ states that Plaintiff has managed his abdominal pain with morphine and oxycodone. The ALJ cites in support one document in the record, a chart note describing a visit to treat Plaintiff's low testosterone. AR 80, citing AR 841. This document describes that Plaintiff

was instructed to wait in the clinic for 20 minutes after receiving a testosterone injection, and then reported he was "feeling fine" and was advised the clinic would call him if the clinic needed to change anything. Plaintiff also asked about his nicotine patches, which were falling off. This document says nothing about the efficacy of Plaintiff's pain management.

Having erroneously concluded that Plaintiff's abdominal pain is well-managed from a treatment note about his testosterone injection, the ALJ then notes that "providers" had informed Plaintiff that he is at risk of an "accidental overdose" from narcotics and that Plaintiff "was advised to reduce his use of opiates because he 'would likely do fine' on a lower dosage." AR 80, citing AR 895. The record, however, shows that only one provider, Physician Assistant Lisa M. Jones, gave this advice one time, when discussing Plaintiff's use of opiates alongside other sedating medications. AR 895. This is not substantial evidence, let alone a clear and convincing reason, to conclude that Plaintiff's pain was well managed.

### c.  Need for a Cane

Plaintiff testified that he uses a cane to walk. AR 128. He stated that he can only walk slowly, for short distances, even with the use of a cane, because Plaintiff's equilibrium "is way out of whack" and if he steps wrong, his abdominal issues could flare up. *Id*. For grocery shopping and similar activities, Plaintiff testified that he relies on an electric cart. *Id*. He owned a motorized scooter, but it was not operational at the time of his hearing. AR 129.

The ALJ discounted Plaintiff's testimony that he requires the use of a cane by relying on several observations in the record that Plaintiff "has generally demonstrated a normal gait." AR 80, citing 514, 519, 568, 898, 939. The ALJ's citations to the record to support this finding are unavailing. The ALJ first cites medical assessments from 2018 that conclude Plaintiff's "[c]oordination and gait [were] normal." AR 514, 519, 898, 939. This was a conclusion, however, about Plaintiff's *neurology*. AR 514, 519, 898, 939. Even where a medical assessment

concludes that Plaintiff had a normal range of motion in all limbs, AR 568, it is an unconvincing

rebuttal of Plaintiff's testimony. Plaintiff does not allege that he needs a cane for musculoskeletal

limitations; he argues that he requires mobility aids because his abdominal scarring interferes

with his ability to maneuver free of pain. AR 128. In addition, there is significant evidence in the

record that Plaintiff uses a cane. *See, e.g.*, AR 145, 179, 394, 396, 452-53, 636, 846, 895, 914,

935. Finally, the ALJ points out that despite Plaintiff's claim to the contrary, the record does not

include a prescription by a surgeon for the cane. AR 80. That no doctor prescribed a cane,

however, does not mean that Plaintiff does not use a cane. The Court does not accept the ALJ's

interpretation of the medical evidence as specific, clear, and convincing enough to discount

Plaintiff's testimony that his abdominal problems cause him to use a cane.

### d.  Objective Medical Evidence

An ALJ may consider the lack of corroborating objective medical evidence as a "relevant

factor in determining the severity of the claimant's" alleged symptoms. *Rollins v.*

*Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). The ALJ may not, however, "discredit the

claimant's testimony as to subjective symptoms merely because they are unsupported by

objective evidence." *Berry v. Astrue*, 622 F.3d 1228, 1234 (9th Cir. 2010) (quoting *Lester v.*

*Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *see also Robbins*, 466 F.3d at 883; 20 C.F.R.

§§ 404.1529(c)(2), 416.929(c)(2) (noting that the Commissioner "will not reject your statements

about the intensity and persistence of your pain or other symptoms or about the effect your

symptoms have on your ability to work solely because the available objective medical evidence

does not substantiate your statements").

Because the Court has rejected the other reasons proffered by the ALJ, the Commissioner

may not rely on the ALJ's recitation of the objective medical evidence and how it purportedly

does not corroborate Plaintiff's alleged limitations. This reason alone is insufficient to discount

Plaintiff's testimony. Thus, the ALJ failed to provide a legally sufficient reason to discount Plaintiff's testimony.

## B. Failure to Consider Additional Evidence

Plaintiff argues that the ALJ erred by excluding more than 1,200 pages of medical evidence, including reports from two treating physicians. Plaintiff asserts that this evidence was in the ALJ's possession because it came from Plaintiff's earlier application for Title II disability, filed on January 27, 2016, and denied on April 4, 2018. Plaintiff states that the ALJ had to review this significant, probative record because he was not bound by the previous ALJ's ruling.

The Commissioner responds that the ALJ did not have the authority to reopen the case and reexamine this evidence, and in any case, that the ALJ reviewed a sufficiently developed record even without these extra pages. Plaintiff replies that the ALJ could reopen his case, de facto did reopen his case by re-adjudicating Plaintiff's claims during the already-examined period, and failed the ALJ's duty to develop the record by ignoring medical opinions from treating sources whether or not the ALJ reopened Plaintiff's case.

The Court need not reach the parties' dispute over whether or how *res judicata* applies or if the ALJ constructively reopened Plaintiff's case. Plaintiff argues and the Commissioner does not dispute that these questions are neither threshold nor dispositive. Instead, the Court resolves this issue by examining whether the ALJ fulfilled his duty to develop the record.

### 1. Standards

Although a claimant is ultimately responsible for providing sufficient medical evidence of a disabling impairment, "the ALJ has a special duty to develop the record fully and fairly and ensure that the claimant's interests are considered, even when the claimant is represented by counsel." *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001). The responsibility to develop the record "rests with the ALJ in part because disability hearings are inquisitorial rather than

adversarial in nature." *Loeks v. Astrue*, 2011 WL 198146, at *5 (D. Or. Jan. 18, 2011) (citing *Sims v. Apfel*, 530 U.S. 103, 110-11 (2000)). "It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits." *Sims*, 530 U.S. at 111.

The ALJ's duty to develop the record is triggered when the evidence is ambiguous or when the ALJ finds that the record is inadequate for a proper evaluation of the claimant's limitations. *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001). The evidence is "insufficient when it does not contain all the information [the Social Security Administration] need[s] to make [its] determination or decision." 20 C.F.R. § 416.920b. Apparent inconsistencies also may trigger the ALJ's duty to develop the record. *Lamear v. Berryhill*, 865 F.3d 1201, 1205 n.3, 1206 (9th Cir. 2017). "The ALJ may discharge this duty in several ways, including: subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record." *Tonapetyan*, 242 F.3d at 1150.

## 2. Analysis

Plaintiff argues that the ALJ committed harmful error by failing to retrieve and consider 1,200 pages of evidence from Plaintiff's previous disability benefits adjudication in 2018. Plaintiff states that he pointed to the existence of these files in his second application for benefits in January 2019 and that the Commissioner knew where to find these records. AR 370. Plaintiff also asserts that his counsel asked the Commissioner's staff to obtain that earlier file. AR 393. This failure to develop the record was harmful error, Plaintiff argues, because the missing files include medical opinions that support Plaintiff's subjective testimony and clarify inconsistencies in the evidence that the ALJ relied on.

The Commissioner does not contest that the ALJ did not examine these records. Rather, the Commissioner contends that the ALJ's duty to develop the record further was not triggered,

because the existing record was unambiguous and adequately robust to allow for a proper evaluation of Plaintiff's claim. As support, the Commissioner provides that the ALJ already had nearly 1,000 pages of evidence, including testimony and prior administrative findings.

The Court agrees with Plaintiff that the ALJ violated his duty to develop the record by overlooking this additional evidence, and that this violation was harmful error. Although the Commissioner argues that the ALJ found neither ambiguity nor inadequacy in the record, the ALJ's failure to examine all the evidence available to him undercuts his evaluation of the record as complete. The "affirmative responsibility to develop the record is necessary to ensure that the ALJ's decision is based on substantial evidence. In cases where an ALJ fails to develop the record, courts cannot conclude that the ALJ's decision was based on substantial evidence." *Alderson v. Saul*, 859 Fed. App'x 25, 27 (9th Cir. 2021) (quotation marks and citation omitted).

The ALJ relies on the RFC assessments of Dr. William Nisbet and Dr. Thomas Davenport, state agency physicians. AR 81, citing 150-51, 160-61, 173, 183. The ALJ concludes that Plaintiff has the RFC to perform the full range of medium work. AR 79. Dr. Nisbet also was a state agency physician assisting the ALJ for Plaintiff's earlier 2018 adjudication. When Dr. Nisbet had access to Plaintiff's full file for the previous adjudication, however, Dr. Nisbet reported that Plaintiff was merely "capable of working at the *light* exertional level with nonexertional limitations in postural activities and environmental work conditions." AR 197 (emphasis added). The ALJ does not suggest that Plaintiff's condition improved since his previous disability claim adjudication. The Court finds this inconsistency worth investigating where Dr. Nisbet draws different conclusions from a full versus partial record of Plaintiff's medical history. Because the ALJ reviewed the previous ALJ's findings, the ALJ should have

noted this inconsistency and developed the record further to ensure his decision was based on substantial evidence.

The ALJ also discounts Plaintiff's subjective symptom testimony by pointing out inconsistencies between that testimony and the medical record. Plaintiff, however, shows that these questions might have been answered by files in the unexamined folder of evidence. For example, the ALJ finds that Plaintiff's account of the severity of his pain contradicts the record because Plaintiff "managed" his pain with prescription medication. AR 80. The ALJ further notes that Plaintiff "has a continuous opiate dependence" and has been informed that "he is at risk for an accidental overdose," though the ALJ does not explain the relevance of these statements. *Id.* One of Plaintiff's primary care physicians who prescribed these pain medications, Dr. Eric Murray, provided a statement on Plaintiff's chronic pain, but this statement was among the evidence that the ALJ did not review. AR 197, 344, 567.

Another example can be found in the ALJ's assertion that Plaintiff's prescription for a cane "is not documented in the record." AR 80. The unexamined files include both a prescription for a motorized scooter and a disabled parking permit to accommodate Plaintiff's mobility issues, AR 341, 339, and evidence from a licensed physical therapist, AR 348. In both examples, the ALJ discounts Plaintiff's subjective testimony by pointing to disagreement or lack of support in the record. The ALJ had been notified, however, that there was more evidence he had not reviewed. He therefore violated his duty to develop the record and consider all files available to him to ensure a full and fair inquisitorial proceeding.

Finally, the parties dispute the relevance of *Hines v. Berryhill*, 2018 WL 817889 (W.D. Wash. Feb. 12, 2018). In *Hines*, the plaintiff claimed that the ALJ's failure to consider two supporting medical opinions was harmful error. The Commissioner responded that these

opinions were marked "Prior Folder" and were initially filed for the plaintiff's earlier disability

application. *Id.* at \*4. The court agreed that the ALJ failed to develop the record and committed

harmful error by ignoring medical evidence without comment. *Id.*

Plaintiff here argues that *Hines* applies because the evidence that the ALJ did not

examine includes testimony from physicians, therapists, and physical therapists, among other

sources. The Commissioner responds that *Hines* does not apply because "[t]he opinions were

part of the record before the ALJ" in *Hines* but not here, and because the claimant in *Hines* had

been previously found disabled but lost his benefits when he was incarcerated. *Id.* Although the

Court agrees with the Commissioner that *Hines* does not mirror all aspects of the circumstances

here, it is analogous enough to demonstrate the principle that an ALJ's affirmative duty to

develop the record must at least include the responsibility to review and respond to reasonably

available and relevant evidence from previous ALJ adjudications. *See also Haines v.*

*Berryhill*, 2018 WL 1509198, at \*3-6 (D. Or. Mar. 27, 2018) (finding a breach of the ALJ's duty

to develop the record where the claimant's counsel "repeatedly requested the ALJ attempt to

obtain the missing medical records of the prior favorable decision" but the ALJ did not do so).

An ALJ's duty to develop the record can demand that the ALJ subpoena physicians or

order additional testing. *Tonapetyan*, 242 F.3d at 1150. Plaintiff asked only that the ALJ make

sure to review medical files already in the government's possession and already incorporated

into a previous ALJ's disability benefits adjudication. "The ALJ did not give compelling or

legitimate reasons for rejecting Plaintiff's request." *Gartner v. Berryhill*, 2017 WL 3208351,

at \*12 (D. Or. July 28, 2017) (finding a breach of the duty to develop the record where the ALJ

declined the claimant's request for an examination to supplement an incomplete record). Because

this other evidence contains medical testimony potentially favorable to Plaintiff and records that

may help resolve inconsistencies, the Court cannot find that the ALJ's failure to examine this

evidence was harmless. *See Lamear*, 865 F.3d at 1206-07.

## C.  Lay Witness Testimony

Plaintiff argues that the ALJ did not acknowledge six statements from lay witnesses

describing their observations of Plaintiff's disability. The Commissioner responds that the ALJ

did not need to address these statements and that, if he did, failure to do so was harmless error.

### 1.  Standards

"In determining whether a claimant is disabled, an ALJ must consider lay witness

testimony concerning a claimant's ability to work." *Stout v. Comm'r*, 454 F.3d 1050, 1053

(9th Cir. 2006). Lay witness testimony regarding a claimant's symptoms or how an impairment

affects her ability to work is competent evidence. *Id.* Thus, an ALJ may not reject such testimony

without comment. *Id.* In rejecting lay testimony, the ALJ need not "discuss every witness's

testimony on an individualized, witness-by-witness basis. Rather, if the ALJ gives germane

reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when

rejecting similar testimony by a different witness." *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th

Cir. 2012). However, "a lack of support from the 'overall medical evidence' is [] not a proper

basis for disregarding [lay witness] observations. The fact that lay testimony and third-party

function reports may offer a different perspective than medical records alone is precisely why

such evidence is valuable at a hearing." *Diedrich v. Berryhill*, 874 F.3d 634, 640 (9th Cir. 2017)

(citations omitted) (citing cases and concluding: "A lack of support from medical records is not a

germane reason to give 'little weight' to those observations.")).

An ALJ errs by failing to "explain her reasons for disregarding . . . lay witness testimony,

either individually or in the aggregate." *Molina*, 674 F.3d at 1115 (quoting *Nguyen v.

Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996)). Such an error may be harmless, and a court must

determine whether the error is "'inconsequential to the ultimate nondisability determination' in the context of the record as a whole." *Id.* at 1122 (quoting *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008)). The error is harmless, for example, "[w]here lay witness testimony does not describe any limitations not already described by the claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony." *Id.* at 1117. When an ALJ ignores *uncontradicted* lay witness testimony that is highly probative of a claimant's condition, "a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout*, 454 F.3d at 1056.

### 2.  Analysis

Plaintiff argues that the ALJ committed harmful error by failing to acknowledge six lay witness statements from Plaintiff's close relatives. The Commissioner responds that the ALJ was not required to explain why he discounted Plaintiff's lay witness testimony under the revised regulations, and that even if he were, that this error was harmless because the same reasons that apply to discount Plaintiff's testimony can be applied to discount the lay witness testimony. The Court agrees with Plaintiff that the ALJ improperly ignored relevant lay witness testimony and therefore committed harmful error.

Plaintiff presented six lay witness testimony reports from various family members: his wife, daughter, his brother and his brother's wife, and his sister-in-law and her husband. AR 394-400. The earlier decision by a different ALJ in 2018 gave "[l]ittle weight . . . to the third party statements" because they were generally "inconsistent with the objective evidence, course of treatment, response to treatment, and activities of daily living." AR 198. The current ALJ's opinion does not reach the same conclusion because it fails to even raise the existence of lay

witness testimony. An ALJ only needs "germane" reasons for rejecting lay witness testimony. *Molina*, 674 F.3d at 1114. Here, however, the ALJ provides no reasons at all. Rejecting Plaintiff's lay witness without comment was legal error. *Stout*, 454 F.3d at 1053.

The revised regulations describing how to evaluate medical opinion testimony state that nonmedical lay statements need not be analyzed using the *medical* statement criteria. *See* 20 C.F.R. §§ 404.1520c(d); 416.920c(d). The Commissioner argues that this revision means that an ALJ does not need to provide *any* reason for discounting nonmedical lay witnesses. The Court has repeatedly found this argument unpersuasive. *See, e.g.*, *John H. v. Kijakazi*, 2022 WL 8035418, at *8 (D. Or. Oct. 14, 2022). The Court finds the Commissioner's argument unpersuasive here for the same reasons.

The Commissioner also argues that any error the ALJ committed in failing to address the lay witnesses' submissions was harmless because the lay testimonies identified no limitation not already accounted for in Plaintiff's symptom testimony. Thus, argues the Commissioner, the Court can discount the lay testimony for the same reasons the ALJ rejected Plaintiff's testimony. The Court disagrees that the lay witness testimony identifies no differing limitations than does Plaintiff's testimony, but because the Court rejected the ALJ's reasons for discounting Plaintiff's testimony, those reasons do not provide a basis to discount the lay testimony.

**D.  Medical Evidence**

Finally, Plaintiff argues that the ALJ found the opinions of non-examining medical consultants to be too persuasive. The Commissioner argues that under the agency's revised regulations, the ALJ properly supported his reliance on the opinions of the two non-examining doctors at issue.

**1.  Standards**

Plaintiff applied for benefits on January 23, 2019.[4] For claims filed on or after March 27, 2017, Federal Regulations 20 C.F.R. §§ 404.1520c and 416.920c govern how an ALJ must evaluate medical opinion evidence. *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844 (Jan. 18, 2017). Under these new regulations, ALJs no longer "weigh" medical opinions, but rather determine which are most "persuasive." 20 C.F.R. §§ 404.1520c(a)-(b), 416.920c(a)-(b). The new regulations eliminate the hierarchy of medical opinions and state that the agency does not defer to any particular medical opinions, even those from treating sources. *Id.*; *see also Woods v. Kijakazi*, 32 F. 4th 785, 792 (9th Cir. 2022) ("The revised social security regulations are clearly irreconcilable with our caselaw according special deference to the opinions of treating and examining physicians on account of their relationship with the claimant."). Under the new regulations, the ALJ primarily considers the "supportability" and "consistency" of the opinions in determining whether an opinion is persuasive. 20 C.F.R. §§ 404.1520c(c), 416.920c(c). Supportability is determined by whether the medical source presents explanations and objective medical evidence to support his or her opinion. 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). Consistency is determined by how consistent the opinion is with evidence from other medical and nonmedical sources. 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

An ALJ may also consider a medical source's relationship with the claimant by looking to factors such as the length of the treatment relationship, the frequency of the claimant's

---

[4] Plaintiff previously applied for Title II benefits on January 27, 2016. In his application for those benefits, Plaintiff alleged the same disability onset date of March 1, 2015. Because the ALJ here found that the previous ALJ's decision held no *res judicata* effect for the non-adjudicated period, the Court relies on 20 C.F.R. §§ 404.1520c and 416.920c.

examinations, the purpose of the treatment relationship, the extent of the treatment relationship, and whether there is an examining relationship. *Id.* §§ 404.1520c(c)(3), 416.920c(c)(3). An ALJ is not, however, required to explain how he or she considered these secondary medical factors, unless he or she finds that two or more medical opinions about the same issue are equally well-supported and consistent with the record but not identical. *Id.* §§ 404.1520c(b)(2)-(3), 416.920c(b)(2)-(3).

The regulations require ALJs to "articulate . . . how persuasive [they] find all of the medical opinions" and "explain how [they] considered the supportability and consistency factors." 20 C.F.R. §§ 404.1520c(b), 416.920c(b). The Court must, moreover, continue to consider whether the ALJ's analysis has the support of substantial evidence. *See* 42 U.S.C. § 405(g); *see also Woods*, 32 F. 4th at 792 ("Our requirement that ALJs provide 'specific and legitimate reasons' for rejecting a treating or examining doctor's opinion, which stems from the special weight given to such opinions . . . is likewise incompatible with the revised regulations . . . Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence.").

### 2. Analysis

Plaintiff argues that the ALJ erroneously relies on the opinions of Drs. Nisbet and Davenport, two non-examining agency medical consultants who found that Plaintiff is capable of medium exertional work. This was error, Plaintiff argues, because Dr. Nisbet and Dr. Davenport lacked access to Plaintiff's full medical record, which includes opinions by treating doctors. Plaintiff highlights that Dr. Nisbet concluded that Plaintiff could only work at a "*light* exertional level with nonexertional limitations in postural activities and environmental work conditions" when Dr. Nisbet had access to Plaintiff's entire medical file. AR 197 (emphasis added).

The Commissioner responds that Plaintiff's argument as to his medical record lacks merit. The Commissioner further responds that the ALJ met his burden under the regulatory requirements for specificity by summarizing the evidence referenced by the doctors in their findings. Plaintiff replies that the Commissioner's response is *post hoc* and cannot be used to uphold the ALJ's evaluation of the findings of Drs. Nisbet and Davenport.

The Court has already addressed the Commissioner's argument about the 1,200 files unexamined by the ALJ and concluded that the ALJ erred in failing to include in the record medical opinions available to him from Plaintiff's previous disability benefits adjudication. ALJs must accompany their rejections of medical opinions with "explanation supported by substantial evidence." *Woods*, 32 F.4th at 792. Because the ALJ disregarded significant probative evidence of Plaintiff's disability without comment, he committed harmful error. *See Kilpatrick v. Kijakazi*, 35 F.4th 1187, 1193 (9th Cir. 2022) (quoting *Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984)).

As to the Commissioner's explanation that the ALJ properly relied on the evidence raised by the doctors themselves in their reports, the Court agrees with both of Plaintiff's counterarguments. First, as Plaintiff points out, the ALJ failed to provide sufficiently specific rationales for his reliance on the opinions of Drs. Nisbet and Davenport. In the ALJ's opinion, he asserts that these doctors "supported the findings with explanations, citing to specific evidence" and that their opinions were "generally consistent with the totality of the evidence received at the hearing level." AR 81. These conclusory statements fail to meet the ALJ's responsibility to "explain how [he] considered the supportability and consistency factors" in finding a medical opinion persuasive. *Woods*, 32 F.4th at 792.

The ALJ next summarized Plaintiff's medical records. The Court infers that the ALJ found the opinions of Drs. Nisbet and Davenport consistent with that summary of Plaintiff's records. That summary, however, relates to Plaintiff's cardiovascular health, a possible misunderstanding of medical comments on Plaintiff's ventral hernia, and evidence that Plaintiff was prescribed certain painkillers. AR 81. These records do not provide substantial evidence for relying on the opinions of Drs. Nisbet and Davenport because they do not address Plaintiff's actual alleged impairments.

Second, as Plaintiff argues, the Commissioner provides improper *post hoc* explanations to support the ALJ's reliance on the opinions of Drs. Nisbet and Davenport. The Court must disregard after-the-fact explanations. *See Bray*, 554 F.3d at 1225 ("Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking."). The Commissioner argues that the state agency physicians reference evidence that Plaintiff "completed a fence project" and "is successfully losing weight." AR 145-46. The ALJ, however, does not discuss those findings in his opinion.

**E.  Remand**

Within the Court's discretion under 42 U.S.C. § 405(g) is the "decision whether to remand for further proceedings or for an award of benefits." *Holohan*, 246 F.3d at 1210 (citation omitted). Although a court should generally remand to the agency for additional investigation or explanation, a court has discretion to remand for immediate payment of benefits. *Treichler*, 775 F.3d at 1099-100. The issue turns on the utility of further proceedings. A court may not award benefits punitively and must conduct a "credit-as-true" analysis on evidence that has been improperly rejected by the ALJ to determine whether a claimant is disabled under the Social Security Act. *Strauss v. Comm'r of the Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

In the Ninth Circuit, the "credit-as-true" doctrine is "settled" and binding on this Court. *Garrison v. Colvin*, 759 F.3d 995, 999 (9th Cir. 2014). The court first determines whether the ALJ made a legal error and then reviews the record as a whole to determine whether the record is fully developed, the record is free from conflicts and ambiguities, and there is any useful purpose in further proceedings. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015). Only if the record has been fully developed and there are no outstanding issues left to be resolved does the district court consider whether the ALJ would be required to find the claimant disabled on remand if the improperly discredited evidence were credited as true. *Id.* If so, the district court can exercise its discretion to remand for an award of benefits. *Id.* The district court retains flexibility, however, and is not required to credit statements as true merely because the ALJ made a legal error. *Id.* at 408.

Plaintiff asks the Court to apply the credit-as-true doctrine and remand this case for immediate payment of benefits. The Court agrees that the ALJ committed reversible error for several reasons. The Court, however, does not find that the record is free of inconsistencies and ambiguities, particularly because the ALJ failed to review 1,200 files relevant to Plaintiff's medical history. The Court therefore remands for further proceedings.

## CONCLUSION

The Court REVERSES the Commissioner's decision that Plaintiff was not disabled and REMANDS for further proceedings consistent with this Opinion and Order.

**IT IS SO ORDERED**.

DATED this 8th day of February, 2023.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge